This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Cynder Lansberry has appealed from the judgment of the Summit County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her six children to the Summit County Children Services Board ("CSB"). This Court affirms.
 I.
Cynder and Gene Lansberry, Sr. are the biological parents of Gene Jr. (dob: 10/12/88), Peter (dob: 2/12/90), Barbie (dob: 5/17/91), Benjamin (dob: 6/8/93), Daniel (dob: 11/6/94), and David (dob: 1/28/96). In October of 1998, the Lansberry residence was condemned, whereupon CSB took custody of the children. Several of the children were so filthy their heads had to be shaved for lice. A foster parent had to teach Gene Jr. and Benjamin how to wipe after a bowel movement. Barbie was afraid of a bath tub.
That same month, a case plan was developed and filed with the juvenile court. Father was investigated and charged for the sex abuse of Benjamin. On April 25, 2000, father was convicted of gross sexual imposition, and sentenced to four years in prison. The case plan was re-filed in November of 2000.
The most recent case plan required: (1) maintenance of safe, stable, and independent housing; (2) mother receiving mental health counseling and an inability to cope with stress; (3) meeting the special needs of her children; and (4) mother would accept the verdict against father convicting him of gross sexual imposition and be protective of her children.
The Lansberry children had profound special needs. Though father was convicted of sexual abuse against Benjamin only, several of the children evinced behaviors consistent with sexual abuse. Prior to the permanent custody trial, appellant did not accept the fact of father's wrongdoing. Barbie told her teacher and a CSB worker that father put his "pee pee," inside of her. Barbie was questioned by Children's Hospital personnel on five different occasions when Barbie was presented for inflammation and swelling of her vagina.[1] Benjamin described to a therapist how father touched his penis and made an up and down motion. Benjamin also engaged in excessive masturbation, reaching into his pants in the presence of others several times a day. On one occasion, Benjamin touched other children on his school bus in their "privates," and also touched his brother Gene Jr.'s "private area," during a visit by the guardian ad litem. Daniel kissed his foster sisters' private parts. Still, appellant told the children's therapist that she hoped to reunify the family when father was released from prison.
Benjamin was diagnosed with ADHD and adjustment disorder. He would routinely lapse into trances. Benjamin was a frequent bed wetter, indicative of sexual abuse. Daniel had a violent temper, ADD, mild retardation, was largely non-verbal, and refused toilet training. Gene Jr. required speech therapy and had emotional needs that required ongoing counseling. Benjamin, Daniel, and Gene Jr. had orthopedic problems with their legs. Peter had obtrusive temper disorder, which produced explosive fits of uncontrollable anger. Peter required medication to regulate his condition.
Appellant suffered from depression, for which she sought counseling from April of 1999 to the beginning of 2001 with Catholic Social Services ("CSS"). However, appellant's counseling sessions were terminated in June of 2001 for failure to hold a session within a nearly five month period. In addition to her unresolved and untreated mental health issue, appellant failed to accept that father was a danger to the children. After two unsupervised visits by Gene Jr. and Barbie at appellant's home, the visits were suspended after appellant allowed telephonic contact with father. Appellant also had trouble tending the basic needs of her children. In a 1999 home visit by the guardian ad litem she observed that Daniel and David (temporarily returned home) had not been timely changed by appellant or father, and that their clothes were soaked with urine. The carpet also smelled of urine. In subsequent visits, Daniel and David continued to have wet pants though appellant was admonished to timely change the children. During supervised visits between appellant and the children, appellant was unable to control the children in a scene described as "chaos," by a CSB worker.
On June 19, 2001, CSB filed a motion for permanent custody of all six Lansberry children. The trial on the CSB's motion was convened on September 11, 2001, and finished the next day. The juvenile court granted permanent custody of the children to CSB.
Appellant has appealed, asserting two assignments of error.
 II. ASSIGNMENT OF ERROR I "THE DECISION OF THE COURT TO GRANT PERMANENT CUSTODY OF THE CHILDREN TO SUMMIT COUNTY CHILDREN SERVICES BOARD LACKED SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS NOT IN THE CHILDREN'S BEST INTERESTS."
In her first assignment of error, appellant claims that the trial court's award of permanent custody to CSB was not supported by sufficient evidence and was against the manifest weight of the evidence. In addition, appellant also claims she substantially complied with the case plan. This Court disagrees.
 Standard of Review
When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. App. No. 18983. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten (1986), 33 Ohio App.3d 339, 340.
Moreover, "every reasonable presumption must be made in favor of the judgment and the findings of facts [of the juvenile court]." Karches v.Cincinnati (1988), 38 Ohio St.3d 12, 19, citing Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment."Karches, 38 Ohio St.3d at 19.
In this regard, this Court is mindful of the deference properly accorded the factual conclusions of the trial court sitting as the trier of fact:
 "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record." Trickey v. Trickey (1952), 158 Ohio St. 9, 13.
The juvenile court has had the opportunity to view the witnesses and observe demeanor, gestures and voice inflections in order to aid in weighing the credibility of the testimony that comes to us on a printed page. See In re Awkal (1994), 95 Ohio App.3d 309, 316. Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
The termination of parental rights is governed by R.C. 2151.414. Before a juvenile court may terminate parental rights with regard to a child who is neither abandoned nor orphaned, it must apply a two-prong test measured by clear and convincing evidence. First, the court must determine that it is in the best interest of the child to be placed in the permanent custody of the petitioning agency, based on an analysis under R.C. 2151.414(D). Second, the court must determine either that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C.2151.414(E), or determine that the child has been in the temporary custody of one or more public children services agencies for more than 12 of the last 22 months. See R.C. 2151.414(B); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will produce in the trier of fact "`a firm belief or conviction as to the facts sought to be established.'" In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 B. Manifest Weight and Sufficiency of the Evidence 1. Best Interest of the Child
Appellant has argued that the evidence does not clearly and convincingly establish it is in the best interests of the children to grant permanent custody to CSB. In determining what is in the best interests of a child under R.C. 2151.414(D), the court should consider all relevant factors, including, but not limited to, the following statutory factors:
 "(1) The interaction and interrelationship of the child with the child, s parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 "(4) The child's need for legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
The juvenile court found that it was in the best interest of the children that they be placed in the permanent custody of CSB.
All six Lansberry children evinced behavior (or in Barbie's case, physical harm to her vagina) consistent with sexual abuse. Father was convicted of GSI against Benjamin and sentenced to prison for four years. Despite this, appellant engaged in a disturbing denial of father's culpability and the harm suffered by her children. Appellant continued to express hopes that her and the children could be reunited with father. Only at the permanent custody trial did appellant unconvincingly pledge to keep father away from the children. As the juvenile court observed:
 "The court also notes its concern regarding mother and her future relationship with father. The Court concedes that mother testified that if the minor children were returned to her care, she would not permit father to have contact with them. However, mother appeared conflicted when testifying on this matter at the Permanent Custody Hearing. In addition, the testimony of [CSB protective worker Joseph] Gero and the report of [the guardian ad litem] revealed that mother has had difficulty accepting the fact that father sexually abused Benjamin, and mother has never been consistent in what her position would be once father is released from prison."
Appellant's lack of certitude regarding her future relationship with father demonstrates her parental unfitness, and demonstrates the best interests of the six children lies in permanent custody to the CSB. This failure by appellant amounted to what CSB social worker Jamie Pastorius described as "no compliance," with the fourth prong of the case plan.
The second prong of the case plan related to appellant receiving mental health counseling. As described supra, appellant failed to maintain any needed mental health counseling over a nearly five month period early in 2001, whereupon her case was terminated by CSS. This violates the second prong of appellant's case plan.
Having failed to tend her own special needs, appellant can scarcely be relied upon to steward her children and their profound special needs. Even temporary unsupervised time with some of her children was problematic as the children's clothes were soiled with urine due to lack of prompt attention and telephonic contact was had with their abusive father. The juvenile court could fairly conclude that the third prong of the case plan — the children having all of their needs met — was not on the road of being satisfied by appellant.
The guardian ad litem, and the attorney representing the children, each concurred that permanent custody to CSB was in the best interests of the children. Each of the children were improving in the care of foster parents, with their special needs being addressed with regular therapy sessions and appropriate parental supervision.
Appellant has also contended that the granting of permanent custody to CSB was erroneous because she had substantially complied with her case plan. This argument is without merit. As discussed above, appellant failed to satisfy the second, third, and fourth prong of a four part case plan. That appellant maintained adequate housing and a regular job in satisfaction of the first prong of the case plan does not obviate her remaining failures. The record demonstrates that though appellant had over two and a half years to comply with the case plan and meet the needs of her children, appellant failed to remedy the conditions that led to the removal of her children excepting adequate housing.
Upon review, this Court finds significant evidence in support of the judgment that it was in the best interest of the children to place them in the permanent custody of CSB. The juvenile court did not err in so finding. Accordingly, appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED BY VACATING THE ORDER GRANTING LEGAL CUSTODY TO THE VANNS AS THE REQUIREMENTS OF CIV. R. 60(B) WERE NOT MET."
In her second assignment of error, appellant seeks to appeal the order of the juvenile court terminating custody of five of the Lansberry children to her aunt and uncle Mr. and Mrs. Vann of Connecticut.
On February 27, 2001, five of the children, all except David, were placed with the Vanns and CSB withdrew its motion for permanent custody at that time. Within three months of the placement, the Vanns felt it was not working out and moved the court to terminate their legal custody. A hearing on the Vann's motion to vacate legal custody and return custody to CSB was held on May 21, 2001.[2] At the hearing, Appellant's attorney indicated she did not oppose the motion. More importantly, Appellant was specifically asked by the trial court regarding the motion and Appellant consented to the termination of custody and the return of the children to Ohio. Therefore, appellant is barred from asserting this alleged error on appeal, and appellant's second assignment of error is overruled.
Judgment affirmed.
SLABY, P.J., BATCHELDER, J. CONCUR
[1] The record is silent as to whether CSB properly shared this information with the appropriate law enforcement authorities.
[2] Although captioned a motion to vacate, the motion is more appropriately deemed a motion to terminate custody.